**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1889**

PROTHERAPY ASSOCIATES, LLC,

Plaintiff - Appellee,

v.

AFS OF BASTIAN, INCORPORATED, d/b/a Bland County Nursing and
Rehab Center; AFS OF FINCASTLE, INCORPORATED, d/b/a Brian
Center Nursing Care of Fincastle; AFS OF LOW MOOR,
INCORPORATED, d/b/a Brian Center Nursing Center of
Alleghany; CANE ISLAND CARE CENTER, L.P.; AMITY FELLOWSERVE
OF HONDO, INCORPORATED, d/b/a Hondo Healthcare and
Rehabilitation; AFS OF LEBANON, INCORPORATED, d/b/a Maple
Grove Rehabilitation and Health Care Center; AFS OF YUMA,
INCORPORATED, d/b/a Palm View Rehabilitation and Care
Center; AMITY FELLOWSERVE, INCORPORATED, d/b/a Kissito
Healthcare; AFS OF HOT SPRINGS, INCORPORATED; AMITY
FELLOWSERVE OF KATY, INCORPORATED,

Defendants - Appellants.

Appeal from the United States District Court for the Western
District of Virginia, at Lynchburg. Norman K. Moon, Senior
District Judge. (6:10-cv-00017-NKM-BWC)

Argued: May 16, 2012                    Decided: July 2, 2012

Before NIEMEYER and KEENAN, Circuit Judges, and Margaret B.
SEYMOUR, Chief United States District Judge for the District of
South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:**   Wyatt B. Durrette, Jr., DURRETTECRUMP PLC, Richmond, Virginia, for Appellants.   Benjamin C. Fultz, FULTZ, MADDOX, HOVIOUS & DICKENS, PLC, Louisville, Kentucky, for Appellee.  **ON BRIEF:**   J. Buckley Warden, IV, DURRETTECRUMP PLC, Richmond, Virginia, for Appellants.   Everett S. Nelson, FULTZ, MADDOX, HOVIOUS & DICKENS, PLC, Louisville, Kentucky, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

ProTherapy Associates, LLC, a provider of trained personnel for skilled nursing facilities such as nursing homes, commenced this breach-of-contract action against nine nursing homes, each of which had contracted to purchase ProTherapy's services. Specifically, ProTherapy seeks to enforce a provision in its contracts with the nursing homes that prohibited the nursing homes from "directly or indirectly" soliciting or hiring ProTherapy's employees, as follows:

> Non-Solicitation. During the term of this Agreement and for one year thereafter, [the nursing home] shall not, directly or indirectly, for [the nursing home] or on behalf of any other person or business entity for the benefit of [the nursing home]: (a) solicit, recruit, entice or persuade any Therapists or other employees or contractors of [ProTherapy] who had contact with [the nursing home] pursuant to this Agreement to become employees or contractors of [the nursing home] responsible for providing services to Patients like the Services hereunder; or (b) employ or use as an independent contractor any individual who was employed or utilized as a contractor by [ProTherapy] for the provision of Services at any time during the twelve (12) months prior to such proposed employment or contracting. Recognizing that compensatory monetary damages resulting from a breach of this section would be difficult to prove, [the nursing home] agrees that such breach will render it liable to [ProTherapy] for liquidated damages in the amount of ten thousands dollars ($10,000) for each such individual.

Beginning in May 2008, ProTherapy entered into its contracts with the nursing homes to train, provide, and supervise licensed therapy personnel. When the nursing homes

3

requested a rate reduction in August 2009, ProTherapy agreed to enter into new contracts with them. Each contract contained the nonsolicitation provision and a provision authorizing each party to terminate the contract by giving 90-days' advance notice.

Several days after executing the revised contracts in August 2009, the nursing homes' parent corporation notified ProTherapy that it intended to exercise its right to terminate the contracts within 90 days. During this same period, the nursing homes had entered into a separate agreement with Reliant Pro Rehab, LLC, to provide therapy services similar to those offered by ProTherapy, but at a lower cost. While the ProTherapy contracts with the nursing homes were still in effect, Reliant began to meet with ProTherapy therapists and to recruit them to provide services to the nursing homes under the contract between Reliant and the nursing homes. The nursing homes assisted Reliant in recruiting ProTherapy's employees by giving it a list of all the ProTherapy personnel working at each location and assisting in making them available to Reliant. Through these efforts, Reliant was able to hire 64 ProTherapy therapists to work for Reliant, beginning when the 90-day notice period expired.

In its complaint, ProTherapy contends that the conduct of the nursing homes in terminating their contracts with it and simultaneously entering into the contract with Reliant, with the

4

purpose of hiring ProTherapy's employees, violated the nonsolicitation provision in ProTherapy's contracts with the nursing homes. ProTherapy demanded that the nursing homes pay it $10,000 in liquidated damages for each ProTherapy employee hired by Reliant to work at the nursing homes.

After completing discovery, the parties filed cross-motions for summary judgment. In its motion, ProTherapy contended that the nursing homes had breached the nonsoliciation provision by using Reliant to indirectly solicit and employ ProTherapy therapists. The nursing homes contended that their actions did not breach the nonsolicitation agreements because Reliant, not the nursing homes, was responsible for recruiting and ultimately employing the 64 therapists who continued to work at the nursing homes after termination of the agreements between the nursing homes and ProTherapy. Alternatively, the nursing homes contended that under controlling principles of Florida law, which the parties agree was applicable, the nonsolicitation provision of the contracts was unenforceable because it imposed a restraint on commerce without a legitimate business justification. The nursing homes also contended that the liquidated damages clause imposed an unconscionable penalty, rather than valid compensatory damages.

The district court entered judgment in favor of ProTherapy, awarding it $640,000 in liquidated damages, plus attorneys fees.

5

The district court found that the nursing homes hired ProTherapy's therapists indirectly, within the prohibited 12-month period, by using Reliant to provide therapy services. It also found that the nonsolicitation agreement was valid as "reasonably necessary to protect [ProTherapy's] legitimate business interests." The court concluded that the discontinuance of ProTherapy's business was not a defense under Florida Statutes § 542.335(1)(g) because it found that the discontinuance was directly connected to the nursing homes' violation of the restrictive covenant. Finally, the court concluded that the liquidated damages provision was enforceable in lieu of compensatory damages and that the $10,000 amount was a "modest sum" in light of ProTherapy's greater expenses in training the therapists and its losses of income from them. From the district court's orders, dated May 3, 2011; May 25, 2011; July 21, 2011; and July 27, 2011, the nursing homes filed this appeal.

After considering the nursing homes' arguments, as contained in their briefs and as presented at oral argument, and reviewing the record de novo, taking the facts and reasonable inferences to be drawn from them in the light most favorable to the nursing homes, we affirm for the reasons given by the district court. See ProTherapy Associates, LLC v. AFS of Bastian, Inc., et al., Civil Action No. 6:10-cv-17 (W.D. Va. May

6

3, 2011); id. (May 25, 2011); id. (July 21, 2011); id. (July 27, 2011).

AFFIRMED